**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **JIMMY DAVID TAYLOR** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CASE NO.** _____ |
| | § | |
| **MEDICAL CITY DALLAS HOSPITAL,** | § | |
| **INC., MEDICREDIT, INC., NPAS** | § | **JURY DEMAND** |
| **SOLUTIONS, LLC,** | § | |
| | § | |
| **Defendant.** | § | |

## COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:**

Jimmy David Taylor ("Plaintiff" or "Mr. Taylor"), files this suit against Medical City

Dallas Hospital, Inc. ("Medical City"), Medicredit, Inc. ("Medicredit"), and NPAS Solutions, LLC

("NPAS") (collectively, "Defendants"), regarding failure to refund overpayment and improper and

illegal efforts to collect on a debt.

## I.  INTRODUCTION

1.     The Plaintiff, Jimmy David Taylor, is a kidney transplant recipient who requires

annual ultrasounds of his transplanted kidney. Mr. Taylor receives these ultrasounds at a hospital

operated by Defendant Medical City on June 14, 2024. Mr. Taylor has been forced to commence

this litigation to address the medical billing and related debt collection nightmare that has resulted

from Medical City's misapplication of his payment-in-full (and then some: Mr. Taylor was

overcharged by $542.92) for one of these annual kidney ultrasounds in 2024.

2.      Mr. Taylor always pays the full amount that Medical City quotes him for his annual

ultrasounds, when checking out after his appointment. For at least the ultrasound in 2024, Medical

City quoted a price to Mr. Taylor that was hundreds of dollars more than the actual price of the ultrasound, which Mr. Taylor, unaware of the overcharge, paid in good faith. In addition to significantly overcharging Mr. Taylor for the ultrasound, Medical City applied Mr. Taylor's payment to another patient's account. Despite being overpaid, Medical City sent Mr. Taylor a bill for the ultrasound.

3.      When Mr. Taylor called Medical City to inquire about its bill for the ultrasound on June 14, 2024, he was eventually transferred to a representative in Medical City's billing department. The Medical City representative acknowledged that Medical City collected Mr. Taylor's payment at his appointment and admitted that Medical City had applied Mr. Taylor's payment to the wrong patient's account. The Medical City representative informed Mr. Taylor that Medical City would correct the payment misapplication and apply Mr. Taylor's payment to the bill for his ultrasound. However, the Medical City representative did not mention or acknowledge that Medical City had overcharged Mr. Taylor by hundreds of dollars for the ultrasound.

4.      Despite the Medical City representative's assurances, Medical City did not correct Mr. Taylor's account as promised. Instead, Medical City sent Mr. Taylor two more bills for the ultrasound, then transferred his account to a third-party debt collector, Defendant Medicredit, which began dunning Mr. Taylor for the ultrasound on behalf of Medical City. In response, Mr. Taylor contacted Medicredit to explain that he had already paid Medical City for the ultrasound, that Medical City had already acknowledged its misapplication of his payment, and that Medical City had promised to correct the account balance. Mr. Taylor provided Medicredit with proof of his payment in the form of a bank statement showing Mr. Taylor had paid and a receipt from Medical City showing that Mr. Taylor's payment for his ultrasound was credited to the wrong

account. In response, Medicredit told Mr. Taylor it would investigate the issue with Medical City and note on its internal records that the debt was disputed.

5.    Over the next several months, Medicredit attempted to collect the disputed debt from Mr. Taylor at least four more times in writing and in at least six phone calls. Mr. Taylor was trapped in a Sisyphean cycle: a Medicredit bill arrived, Mr. Taylor called Medicredit, Medicredit's employee attempted to collect the disputed debt, Mr. Taylor explained the situation, Medicredit's employee acknowledged that there was a note on Mr. Taylors account explaining the situation, the call ended, then a month or so later another Medicredit bill arrived and the cycle began anew. Mr. Taylor spent hours going back-and-forth between Medical City and Medicredit, trying to get them to correct the issue and stop harassing him for payment of this already-paid bill. Despite Mr. Taylor's efforts, Medical City and/or Medicredit failed and/or refused to make the necessary account correction, and Medicredit continued attempting to collect for the ultrasound.

6.    During one phone call, Medicredit suggested to Mr. Taylor that he call Medical City directly to resolve the issue. Mr. Taylor did so, but Medical City representatives refused to speak with him regarding the bill, or to transfer his call to management, and insisted that he could only resolve the issue by talking with Medicredit.

7.    During another call, Medicredit's representative admitted to Mr. Taylor that, despite the debt being disputed and Mr. Taylor providing proof the debt was not owed, Medicredit would likely continue attempting to collect it from him.

8.    Medicredit only stopped trying to collect from Mr. Taylor when the account was transferred to a new debt collection agency, NPAS, which, in turn, promptly commenced efforts to collect the already-paid ultrasound bill from Mr. Taylor.

---

**PLAINTIFF'S ORIGINAL COMPLAINT**

9.    As of the filing of this complaint, Medical City is still holding Mr. Taylor's overpayment for the ultrasound and has not applied any of it to his ultrasound bill, nor has Medical City refunded the overpaid portion back to him, which they have now been holding since June 14, 2024. The account remains in collections with NPAS.

## II. PARTIES

10.    Plaintiff Jimmy David Taylor is an individual residing in Allen, Texas.

11.    Defendant Medical City Dallas Hospital, Inc. is a Texas Corporation that may be served with process through its registered agent, C T Corporation Systems, at 1999 Bryan Street, Suite 900 Dallas, Texas 75201.

12.    Defendant Medicredit, Inc. is a Missouri corporation that may be served with process through its registered agent, C T Corporation Systems, at 1999 Bryan Street, Suite 900 Dallas, Texas 75201.

13.    Medicredit has an active debt collection bond filed with the Texas Secretary of State. The bond was filed on November 18, 2013.

14.    Defendant NPAS Solutions, LLC is a Tennessee corporation that may be served with process through its registered agent, C T Corporation Systems, at 1999 Bryan Street, Suite 900 Dallas, Texas 75201.

15.    NPAS has an active debt collection bond filed with the Texas Secretary of State. The bond was filed on May 25, 2012.

## III. JURISDICTION AND VENUE

16.    This Court has jurisdiction over this action proceeding pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).  The court also has pendant jurisdiction over the state law claims in the action pursuant to 28 U.S.C. § 1367.

**PLAINTIFF'S ORIGINAL COMPLAINT**                                                                                      **Page 4**

17.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to Plaintiff's claims occurred in this district. Defendants Medical City, Medicredit, and NPAS sent collection letters in this district targeting Plaintiff, a resident of this district. Defendants Medicredit and NPAS also directed phone calls in this district targeting Plaintiff.

## IV. FACTUAL ALLEGATIONS

18.     On June 14, 2024, Plaintiff received an ultrasound of his transplanted kidney at Medical City Dallas.

19.     During that visit, Plaintiff paid Medical City Dallas $1,339.00 for the "estimated" bill for the ultrasound using his Visa credit card.

20.     A true and correct redacted copy of Plaintiff's bank statement for May 19, 2024, through June 18, 2024, showing Plaintiff's June 14, 2024, payment of $1,339.00 to Medical City is attached hereto as **Exhibit A.**

21.     Medical City sent Plaintiff an invoice dated June 30, 2024, which claimed that Plaintiff owed Medical City $1,410.52 for services rendered June 14, 2024.

22.     A true and correct redacted copy of Medical City's June 30, 2024 invoice is attached hereto as **Exhibit B.**

23.     Because he had already paid for his June 14, 2024 ultrasound, Plaintiff contacted Medical City by phone to dispute the June 30, 2024 invoice. After speaking with multiple Medical City representatives, Plaintiff reached a senior representative in Medical City's billing department, who Mr. Taylor understood to be the head of Medical City's billing department. This representative told Plaintiff that his name was "Doug".

24.    Doug told Mr. Taylor that Medical City had credited his June 14, 2024 payment for the ultrasound to another patient's account.

25.    A true and correct redacted copy of the Medical City receipt showing the account to which Medical City credited Plaintiff's June 14, 2024 payment of $1,339.00 is attached hereto as **Exhibit C.**[1]

26.    After identifying the payment misapplication, Doug told Plaintiff that Medical City would correct their error and credit Plaintiff's June 14, 2024 payment of $1,339.00 to Plaintiff's account.

27.    After this phone call with Medical City, Plaintiff believed the issue was resolved.

28.    However, Medical City sent Plaintiff a collection letter dated November 2, 2024, demanding that Plaintiff pay $796.08 for services rendered on June 14, 2024. Medical City did not provide any further explanation for the charge.

29.    Notably, the alleged balance due on Medical City's November 2, 2024 collection letter was $542.92 less than Plaintiff paid Medical City for the ultrasound on June 14, 2024, and $614.44 less than Medical City claimed Plaintiff owed in their June 30, 2024 bill.

30.    A true and correct redacted copy of Medical City's November 2, 2024, collection letter is attached hereto as **Exhibit D.**

31.    Although Plaintiff did not owe anything to Medical City at the time, Medical City sent Plaintiff a second collection letter for $796.08 dated January 6, 2025 for services rendered on June 14, 2024.

32.    A true and correct redacted copy of Medical City's January 6, 2025 collection letter is attached hereto as **Exhibit E.**

---

[1] Plaintiff has redacted this receipt to protect the other patient's identity and confidential medical information.

33.     On or around January 26, 2025, Medical City referred the disputed debt to Defendant Medicredit for collection.

34.     Medicredit contacted Plaintiff by phone on February 25, 2025. Plaintiff did not answer the phone call.

35.     A true and correct record of Plaintiff's call history with Medicredit during 2025 is attached hereto as **Exhibit F.**

36.     Medicredit contacted Plaintiff by phone on July 24, 2025. Plaintiff did not answer the phone call. *See* Exhibit F.

37.     Medicredit sent Plaintiff a collection letter dated July 24, 2025, falsely claiming that Plaintiff owed Medical City $796.08 for services rendered on June 14, 2024.

38.     A true and correct redacted copy of Medicredit's July 24, 2025 collection letter is attached hereto as **Exhibit G.**

39.     Medicredit contacted Plaintiff by phone on July 29, 2025. Plaintiff did not answer the phone call. *See* Exhibit F.

40.     Plaintiff received Medicredit's July 24, 2025 collection letter on July 29, 2025, and immediately called Medicredit to dispute the debt. At the beginning of this phone call, after Plaintiff provided identifying information, a Medicredit representative stated that Plaintiff owed $796.08 to Medical City and attempted to collect the disputed debt. Plaintiff explained to the Medicredit representative that Medical City had misapplied his payment for the June 14, 2024 ultrasound and that Medical City had previously committed to correcting their mistake by applying Plaintiff's payment of $1,339.00 to his account. The Medicredit representative stated that they would note the dispute on Plaintiff's account. *See* Exhibit F.

41.    Immediately after concluding the July 29, 2025 phone call with Medicredit, Plaintiff sent an email to Medicredit which, once again, explained the situation and provided relevant documentation.

42.    Attached to this email were an excerpt from Exhibit A and a copy of Exhibit C to prove the veracity of Plaintiff's account.

43.    A true and correct copy of the July 29, 2025 email Plaintiff sent to Medicredit along with its attachments are attached hereto as composite **Exhibit H.**

44.    Despite Plaintiff having disputed the debt verbally and in writing, Medicredit sent Plaintiff a second collection letter dated August 1, 2025, which again falsely claimed that Plaintiff owed Medical City $796.08. Included in this collection letter was a statement acknowledging that the debt was disputed and requesting that Plaintiff call Medicredit to provide additional information.

45.    A true and correct copy of the August 1, 2025 Medicredit collection letter is attached hereto as **Exhibit I.**

46.    After receiving Medicredit's August 1, 2025 collection letter, Plaintiff contacted Medicredit by phone on August 12, 2025. Just like in Plaintiff's previous phone call to Medicredit, at the beginning of this phone call, after Plaintiff provided identifying information, a Medicredit representative falsely stated that Plaintiff owed $796.08 to Medical City and attempted to collect the disputed debt. Plaintiff again explained to Medicredit's representative that Medical City had misapplied his payment for the June 14, 2024 ultrasound and that Medical City had committed to correcting their mistake. After Plaintiff explained the situation, the Medicredit representative acknowledged that there was already a note on Plaintiff's Medicredit account which described the dispute. *See* Exhibit F.

47.     Medicredit called Plaintiff on September 15, 2025 in an attempt to collect the disputed debt. Plaintiff, yet again, explained the situation and the Medicredit representative, yet again, acknowledged that there was already a note on Plaintiff's account which described the dispute. The Medicredit representative told Plaintiff that Plaintiff's email to Medicredit on July 29, 2025 had not been received and requested that Plaintiff again send his explanation of the situation in writing and provide relevant documents. *See* Exhibit F.

48.     On September 15, 2025 Plaintiff sent a second email to Medicredit with an explanation of the disputed debt's history. Attached to this email were an annotated version of Exhibit A and a copy of Exhibit C to prove the veracity of Plaintiff's account.

49.     A true and correct copy of the September 15, 2025 email Plaintiff sent to Medicredit along with its attachments are attached hereto as composite **Exhibit J.**

50.     Medicredit sent Plaintiff a third collection letter dated September 17, 2025 which claimed, once again, that Plaintiff owed Medical City $796.08. Included in this collection letter was a statement, identical to the previous letter's, acknowledging that the debt was disputed and requesting that Plaintiff call Medicredit to provide additional information.

51.     A true and correct copy of this September 17, 2025 Medicredit collection letter is attached hereto as **Exhibit K.**

52.     Medicredit sent Plaintiff a debt validation letter dated September 17, 2025 and a second debt validation letter dated September 24, 2025. Despite purporting to have validated the debt, Medicredit did not respond to any of Plaintiff's specific allegations regarding Medical City's misapplication of his June 14, 2024 ultrasound payment, nor did Medicredit acknowledge in its debt validation letters the proof of payment Plaintiff had provided.

---

53.     Medicredit sent Plaintiff a fourth collection letter dated September 25, 2025, which repeated the false claim that Plaintiff owed Medical City $796.08. Included in this collection letter was another statement acknowledging that the debt was disputed and again requesting that Plaintiff call Medicredit to provide additional information.

54.     A true and correct copy of the September 25, 2025 Medicredit collection letter is attached hereto as **Exhibit L.**

55.     The September 25, 2025 collection letter acknowledging an ongoing dispute directly contradicted the September 17 and September 24, 2025 debt validation letters from Medicredit and re-established that the debt was disputed and that Medicredit had not resolved the dispute.

56.     Plaintiff called Medicredit for the third time on October 24, 2025. Yet again, at the beginning of this call, after Plaintiff provided identifying information, a Medicredit representative stated that Plaintiff owed $796.08 to Medical City and attempted to collect the disputed debt. Plaintiff, for the third time, explained that Medical City had misapplied his payment and committed to correct the mistake. The Medicredit representative then acknowledged that there was already a note on Plaintiff's Medicredit account about the situation. *See* Exhibit F.

57.     Medicredit sent Plaintiff a fifth collection letter dated October 28, 2025, which still claimed that Plaintiff owed Medical City $796.08. Included in this collection letter was yet another statement acknowledging that the debt was disputed and requesting that Plaintiff call Medicredit to provide additional information.

58.     A true and correct copy of the October 28, 2025 Medicredit collection letter is attached hereto as **Exhibit M.**

---

**PLAINTIFF'S ORIGINAL COMPLAINT**

59.     Plaintiff called Medicredit for the fourth time on November 18, 2025. As expected, at the beginning of this call, after Plaintiff provided identifying information, a Medicredit representative stated that Plaintiff owed $796.08 to Medical City and attempted to collect the disputed debt. Plaintiff, for the fourth time, explained that Medical City had misapplied his payment and committed to correct the mistake. Like the others, this fourth Medicredit representative acknowledged that there was already a note on Plaintiff's Medicredit account describing the situation. *See* Exhibit F.

60.     Medicredit contacted Plaintiff by phone on December 15, 2025 at 2:11 p.m. The cycle continued: at the beginning of this call a Medicredit representative stated that Plaintiff owed $796.08 to Medical City and attempted to collect the disputed debt. Plaintiff, for at least the sixth time, explained that Medical City had misapplied his payment for the June 14, 2024 ultrasound and that Medical City had committed to correcting their mistake. After Plaintiff explained the situation, the Medicredit representative acknowledged that there was already a note on Plaintiff's Medicredit account detailing the situation. Unlike in prior calls, this Medicredit representative suggested that Plaintiff contact Medical City to resolve the issue. *See* Exhibit F.

61.     Plaintiff called Medical City on December 15, 2025 at 2:20 p.m. and explained the situation. Medical City's representative refused to speak with Plaintiff regarding the disputed debt and refused to transfer Plaintiff to Medical City's billing manager. The Medical City representative transferred Plaintiff's call to Medicredit, where Plaintiff endured the same cycle of providing identifying information, being asked to pay the disputed debt, explaining the situation, and having the Medicredit representative acknowledge that a note explaining the situation was on Plaintiff's account.

**PLAINTIFF'S ORIGINAL COMPLAINT**                                              **Page 11**

62.     Plaintiff called Medical City again on December 15, 2025 at 2:55 p.m. and again explained the situation. This time, Medical City's representative told Plaintiff that Medical City's billing manager (or head of the billing department) was not available that day. Medical City's representative also told Plaintiff that even if the billing manager were available, Plaintiff would not be allowed to speak with them, and referred Plaintiff back to Medicredit to resolve the dispute.

63.     A true and correct redacted copy of Plaintiff's call history showing calls to and from Medicredit, and to Medical City's billing department (at 844-974-3800) on December 15, 2025, are attached hereto as composite **Exhibit N.**

64.     After his second December 15, 2025 phone call to Medical City, Plaintiff decided the only way to resolve his issues with Medical City and Medicredit would be by obtaining legal representation.

65.     During at least three of Plaintiff's calls to Medicredit, Medicredit's representatives acknowledged that Plaintiff had proved he did not owe the disputed debt. Despite these admissions, Medicredit continued collection efforts instead of correcting its records to reflect its conclusion that Plaintiff did not owe the disputed debt.

66.     During one of Plaintiff's phone calls with Medicredit, Medicredit's representative stated that they would contact Medical City to resolve the dispute. During a later phone call, a different Medicredit representative informed Plaintiff that in response to Medicredit's inquiry, Medical City claimed that they refunded Plaintiff's June 14, 2024 payment of $1,339.00 in August of 2024.

67.     As of the date of this complaint, Medical City has not refunded Plaintiff's payment of $1,339.00 nor any portion of it.

**PLAINTIFF'S ORIGINAL COMPLAINT**                                                                **Page 12**

68.    A true and correct redacted copy of Plaintiff's bank statements for August of 2024 reflecting no refunds from Medical City or any other source are attached hereto as composite **Exhibit O.**

69.    In December of 2025, collection efforts on the disputed debt were taken over by a new debt collector, NPAS, which sent Plaintiff a collection letter dated December 27, 2025. This collection letter, like all the others, claimed that Plaintiff owed Medical City $796.08.

70.    A true and correct copy of the December 27, 2025 NPAS collection letter is attached hereto as **Exhibit P.**

71.    On December 29, 2025, NPAS left a voicemail for Plaintiff stating that they were attempting to collect a debt on behalf of Medical City Dallas.

72.    NPAS sent Plaintiff a settlement offer dated March 31, 2026, which offered to settle the disputed debt of $796.08 for $477.65.

73.    A true and correct copy of the March 31, 2026 settlement offer is attached hereto as **Exhibit Q**.

### *Defendants Have Damaged Plaintiff*

74.    As a result of Defendants' conduct, Mr. Taylor has incurred damages, including the loss of $542.92 Medical City should have refunded, monetary loss from lost time Mr. Taylor would have used to generate income, attorneys' fees, and emotional distress/mental anguish damages from Mr. Taylor's understandable mortal terror that he may be treated differently by his medical providers or potentially be refused life-saving care for taking legal action against Medical City.

75.    Plaintiff seeks redress for his overpayment to Medical City and for the repeated unlawful collection efforts by Medical City, Medicredit and NPAS, in amounts to be determined at trial.

*Defendants' Pattern and Practice and Lack of Adequate Policies and Procedures*

76.    It is the pattern and practice of Medical City to send disputed and inaccurate accounts to third parties for collection. Furthermore, Medical City either lacks, or fails to follow, policies and procedures that would prevent it from committing billing errors and sending disputed and inaccurate accounts to third parties for collection. This is evidenced by Medical City's misapplication of Plaintiff's June 14, 2024 payment, then referring the account to Medicredit and later NPAS for collection.

77.    It is the pattern and practice of Medical City to not correct an error after committing to do so. Furthermore, Medical City either lacks, or fails to follow, policies and procedures that would ensure that it corrects errors when they are identified. This is evidenced by Medical City identifying its misapplication of Plaintiff's June 14, 2024 payment, committing to correct the misapplication, then failing to correct the misapplication and subsequently refusing to speak with Plaintiff regarding the account.

78.    It is the pattern and practice of Medicredit to repeatedly attempt collection on disputed debts without first conducting a reasonable investigation of the basis for the consumer's dispute. Furthermore, Medicredit either lacks, or fails to follow, policies and procedures that would prevent it from attempting to collect disputed debts without first conducting a reasonable investigation. In one of Plaintiff's calls with Medicredit, Medicredit's representative acknowledged that Plaintiff would likely receive more collection calls or bills from Medicredit, despite Plaintiff consistently disputing the debt and Medicredit repeatedly acknowledging orally and in writing that the debt was disputed. This pattern and practice is further evidenced by another suit brought against Medicredit for attempting to collect a disputed debt. *See Lupia v. Medicredit, Inc.*, 445 F. Supp. 3d 1271, 1280-1285 (D. Colo. 2020).

---

**PLAINTIFF'S ORIGINAL COMPLAINT**                                                                                **Page 14**

79.    It is the pattern and practice of Medicredit to dun individuals for debts the individuals are not legally responsible to pay. Furthermore, Medicredit either lacks, or fails to follow, policies and procedures that would prevent it from dunning individuals for debts the individuals are not legally responsible to pay. This is evidenced by Plaintiff's interactions with Medicredit and by several recent or ongoing suits filed against Medicredit for dunning individuals for medical bills covered by worker's compensation. *See Messersmith V. Medicredit Inc.*, No. 24cv2543 (M.D. Fla. 2024); *Faguy v. Medicredit Inc.*, No. 24cv62028 (S.D. Fla. 2024); *Asher v. Medicredit Inc.*, No. 26cv312 (M.D. Fla. 2026).

80.    It is the pattern and practice of Medicredit to force alleged debtors to contact the original creditor of a debt regarding a dispute, even though under the Texas Debt Collections Act ("TDCA") and the Federal Debt Collection Practices Act ("FDCPA") it is the debt collector's obligation to act when a debt is disputed. Furthermore, Medicredit either lacks, or fails to follow, policies and procedures that would prevent it from forcing alleged debtors to contact their original creditors regarding a dispute. This is evidenced by Plaintiff's interactions with Medicredit and by another case filed against Medicredit. *See Belmont V. Medicredit, Inc.*, No. 18cv4102 (W.D Mo. 2018).

81.    It is the pattern and practice of NPAS to dun individuals for debts the individuals are not legally responsible to pay. Furthermore, NPAS either lacks, or fails to follow, policies and procedures that would prevent it from dunning individuals for debts the individuals are not legally responsible to pay. This is evidenced by Plaintiff's interactions with NPAS and by a class action filed against NPAS for attributing the wrong name to many individuals' phone numbers and trying to collect debts from the wrong individuals as a result. *See Fishman v. NPAS Solutions, LLC*, No. 17cv80393 (S.D. Fla. 2017). This pattern and practice is further evidenced by a recent suit filed

---

**PLAINTIFF'S ORIGINAL COMPLAINT**                                          **Page 15**

against NPAS for attempting to collect medical bills covered by worker's compensation. See *Hoff v. NPAS Solutions, LLC*, No. 26cv3440 (C.D. Cal. 2026).

82.     It is the pattern and practice of NPAS to attempt collection of disputed debts without first conducting a reasonable investigation of the basis for the consumer's dispute. Furthermore, NPAS either lacks, or fails to follow, policies and procedures that would prevent it from attempting to collect a disputed debt without conducting a reasonable investigation. This is evidenced by another suit brought against NPAS. *See Ngo v. NPAS Solutions*, LLC, No. 20cv566 (E.D. La. 2020).

## V.  CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF THE TEXAS DEBT COLLECTION ACT
### (AS TO DEFENDANTS MEDICAL CITY, MEDICREDIT, AND NPAS)

83.     The allegations in the paragraphs above are re-alleged and incorporated herein by this reference.

84.     Plaintiff is a consumer for purposes of the TDCA (Tex. Fin. Code Ann. § 392.001 et seq.).

85.     The disputed debt is a consumer debt for purposes of the TDCA as it arose for personal purposes.

86.     Defendants Medical City, Medicredit, and NPAS are debt collectors for purposes of the TDCA because they are persons "who directly or indirectly [engage] in debt collection." Tex. Fin. Code Ann. § 392.001(6); see also, *Holt v Ocwen Loan Servicing, LLC*, 3:13-cv-120, 2013 WL 7211759, at *2 (S.D. Tex. December 12, 2013) (distinguishing between the more expansive definition of "debt collector" under TDCA § 392.001(6) and the definition "third-party

---

**PLAINTIFF'S ORIGINAL COMPLAINT**                                        **Page 16**

debt collector" under § 392.001(7), which adopts the more restrictive definition of debt collector under the FDCPA.).

87.    Defendants Medicredit and NPAS are third-party debt collectors for purposes of the TDCA because they acquired servicing rights for the disputed debt, attempted to collect on it, and are businesses that regularly collect or attempt to collect debts owed to another. Tex. Fin. Code Ann. § 392.001(7) (adopting the FDCPA definition of "debt collector").

88.    Tex. Fin. Code Ann. § 392.304(a)(8) prohibits debt collectors from "misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding."

89.    Medical City, Medicredit, and NPAS each violated § 392.304(a)(8) by misrepresenting the amount of a consumer's debt.

90.    Medical City violated § 392.304(a)(8) when it sent Plaintiff a bill dated June 30, 2024, and collection letters dated November 2, 2024, and January 6, 2025. These correspondences were attempts to collect the disputed debt and materially misrepresented the amount of Plaintiff's debt because the first correspondence stated Plaintiff owed $1,410.52 and the other two correspondence stated Plaintiff owed $796.08 when Plaintiff's actual debt was $0.00. In fact, Medical City owes Plaintiff a $542.92 refund for overcharging him. *See* Exhibits B, D, and E.

91.    Medicredit violated § 392.304(a)(8) with the collection letters it sent Plaintiff dated July 24, August 1, September 17, September 25, and October 28, 2025. Medicredit further violated § 392.304(a)(8) when it made collection calls to Plaintiff on February 25, July 24, July 29, September 15, and December 15, 2025, and when it attempted to collect the disputed debt from Plaintiff over the phone after Plaintiff called Medicredit on July 29, August 12, October 24, November 18, and December 15, 2025. In each of these communications, Medicredit

---

**PLAINTIFF'S ORIGINAL COMPLAINT**                                          **Page 17**

misrepresented the amount of a consumer debt as Medicredit maintained that Plaintiff owed $796.08 when the actual debt amount was $0.00. *See* Exhibits F, G, I, K, M, and N.

92.    NPAS violated § 392.304(a)(8) when it sent Plaintiff a collection letter dated December 27, 2025, made a collection call to Plaintiff on December 29, 2025, and sent Plaintiff a settlement offer for the disputed debt date March 31, 2026. These communications all materially misrepresented the amount of a consumer debt as NPAS maintained that Plaintiff owed $796.08 when the actual debt amount was $0.00. *See* Exhibits P and Q.

93.    Should any of the Defendants respond to this complaint by asserting that Plaintiff does owe the disputed debt, they will have further violated § 392.304(8) of the TDCA by misrepresenting a debt's status in a judicial proceeding.

94.    Tex. Fin. Code Ann. § 392.202(a) establishes that, "An individual who disputes the accuracy of an item that is in a third-party debt collector's. . . file on the individual and that relates to a debt being collected by the third-party debt collector may notify in writing the third-party debt collector of the inaccuracy."

95.    Plaintiff, disputing the accuracy of Medicredit's file on him relating to the alleged debt of $796.08 that Medicredit was attempting to collect, notified Medicredit in writing of the inaccuracy on July 29, 2025, and September 15, 2025. *See* Exhibits H and J.

96.    Tex. Fin. Code Ann. § 392.202(b) requires that, "Not later than the 30th day after the date a notice of inaccuracy is received," third-party debt collectors "shall send a written statement" denying, admitting, or stating they had insufficient time to investigate the inaccuracy.

97.    Tex. Fin. Code Ann. § 392.202(c) establishes that, "If the third-party debt collector admits that the item is inaccurate" it must "not later than the fifth business day after the date of the

admission, correct the item in the relevant file" and "immediately cease collection efforts related to the portion of the debt that was found to be inaccurate."

98.    Medicredit violated § 392.202(b) and § 392.202(c) of the TDCA by failing to properly respond to Plaintiff's disputes, failing to correct an item after acknowledging its inaccuracy and continued to attempt collection on a debt it admitted to be inaccurate.

99.    Medicredit sent Plaintiff debt validation letters on September 17 and September 24, 2025, but subsequently in at least two collection letters and three phone calls, acknowledged that the debt was still in dispute. Medicredit's debt validation letters were thus ineffectual and did not satisfy § 392.202(b)'s response requirement. Even if Medicredit's debt validation letters did satisfy § 392.202(b), Medicredit did not respond to any of Plaintiff's subsequent disputes of the debt and did not explain how the debt was valid despite the evidence Plaintiff provided in the form of an excerpt from Exhibit A and a copy of Exhibit C attached to Plaintiff's emails to Medicredit on July 29, 2025 and September 15, 2025. *See* Exhibits H and J. Medicredit thus violated § 392.202(b).

100.    Medicredit violated § 392.202(c) as Medicredit representatives acknowledged at least three times orally that Plaintiff had proved the debt was not owed, yet Medicredit did not correct its own records and continued its collection efforts for months after Plaintiff provided proof sufficient to establish the disputed debt was not owed. Medicredit only stopped its collection efforts when the account was transferred to NPAS.

101.    Plaintiff has incurred and is entitled to an injunction against Defendants to prevent future attempts to collect the debt in violation of the TDCA, as provided in § 392.403(a).

102.    Plaintiff is entitled to actual damages, and reasonable attorneys' fees for pursuing these claims as provided in § 392.403(a)-(b).

103.    As a result of Defendants' violations of the TDCA, Mr. Taylor has incurred damages, including monetary loss from lost time Mr. Taylor could have used to generate income, attorneys' fees, and emotional damages from Mr. Taylor's concern that he may be treated differently or potentially be refused life-saving care for taking legal action against Medical City.

104.    Plaintiff is entitled to exemplary damages. The pattern and practice of Defendants in committing these kind of violations, as well as Defendants' lack of (or ignoring of) policies and procedures that would prevent them from committing these violations, show that Defendants acted with reckless disregard for the harm their actions caused Plaintiff. Exemplary damages are thus justified to incentivize Defendants to adjust their patterns, practices, and policies.

### COUNT II
### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### (AS TO DEFENDANTS MEDICREDIT AND NPAS)

105.    The allegations in the paragraphs above are re-alleged and incorporated herein by this reference.

106.    Congress enacted the FDCPA to regulate the collection of consumer debts by debt collectors. The express purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to ensure that debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent state action to protect consumers against debt collection abuses." 15 U.S.C. §1692e.

107.    The FDCPA is a strict liability statute, which provides for actual and statutory damages upon the showing of a single violation. *Eastman v. Baker Recovery Services (In re Eastman)*, 419 B.R. 711, 733 (Bankr. W.D. Tex. 2009); see also *Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1238 (5th Cir. 1997). Because the FDCPA imposes strict

---

liability, there is no requirement that the actions taken by a debt collector "be intentional or actionable." *Eastman*, 419 B.R. at 728.

108. The FDCPA is also a remedial statute and therefore must be construed liberally in favor of the debtor. *Serna v. Law Office of Joseph Onwuteaka, P.C.*, 732 F.3d 440, 445 (5th Cir. 2013).

109. The disputed debt is a consumer debt as defined in § 1692a(5) because it arose from a transaction for personal purposes.

110. Plaintiff is a consumer as defined in 15 U.S.C. § 1692a(3) because he is allegedly obligated to pay a consumer debt.

111. Defendants Medicredit and NPAS are debt collectors as defined in § 1692a(6) because they obtained servicing rights to the disputed debt and attempted to collect on it on behalf of Medical City.

112. Medicredit and NPAS also regularly engage in business, the primary purpose of which is the collection of debt as defined in § 1692a(5).

113. 15 U.S.C. § 1692e(2)(A) establishes that a debt collector may not falsely represent the "character, amount, or legal status of any debt." Under § 1692e(2)(A), "[a] debt collector may not claim an amount more than actually owed, or falsely assert that the debt has matured or that it is immediately due and payable, when it is not." *Manning v. Elevate Recoveries*, No. 16-CV-9422017, U.S. Dist. LEXIS 191683, at *9 (E.D. Tex. 2017) (quoting 53 Fed. Reg. 50097-2, 50106).

114. Medicredit and NPAS each violated § 1692e(2)(A) by making false representations of the amount and legal status of medical debt.

115.    Medicredit violated § 1692e(2)(A) with the collection letters it sent Plaintiff dated July 24, August 1, September 17, September 25, and October 28, 2025. Medicredit further violated § 1692e(2) when it made collection calls to Plaintiff on February 25, July 24, July 29, September 15, and December 15, 2025, and when it attempted to collect the disputed debt from Plaintiff after Plaintiff called Medicredit on July 29, August 12, October 24, November 18, and December 15, 2025. In each of these communications, Medicredit misrepresented the amount due as they represented the amount due as being $796.08 when the actual amount due was $0.00. In each of these communications, Medicredit misrepresented the legal status of a debt as they represented the disputed debt as being owed when it was actually paid in full. *See* Exhibits F, G, I, K, M, and N.

116.    NPAS violated § 1692e(2) when it sent Plaintiff a collection letter dated December 27, 2025, made a collection call to Plaintiff on December 29, 2025, and sent Plaintiff collection correspondence dated March 31, 2026. These communications all misrepresented the amount due as they represented the amount due as being $796.08 when the actual amount due was $0.00. These communications all misrepresented the legal status of a debt as they represented the disputed debt as being owed when it was actually paid in full. *See* Exhibits P and Q.

117.    15 U.S.C. § 1692g(b) establishes that "If the consumer notifies the debt collector in writing" within 30 days of receiving the first collection letter from the debt collector "that the debt, or any portion thereof, is disputed. . . the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment."

118.    Medicredit violated § 1692g(b) by continuing to attempt collection of the disputed debt after receiving Plaintiff's written notice of dispute and without obtaining verification of the debt.

---

**PLAINTIFF'S ORIGINAL COMPLAINT**                                                          **Page 22**

119.    The first collection letter Medicredit sent to Plaintiff was dated July 24, 2025. Plaintiff received this letter on July 29, 2025, and sent a written dispute to Medicredit the same day. Plaintiff's written dispute explained how Medical City misapplied his June 14, 2024 ultrasound payment, that Medical City had acknowledged this error, and that Medical City had promised to correct its mistake. Plaintiff attached an excerpt from Exhibit A and a copy of Exhibit C to prove his claims. *See* Exhibit H.

120.    Medicredit did send Plaintiff two debt validation letters, dated September 17 and September 25, 2025, but Medicredit's assertion that it had validated the debt was undercut by the two subsequent collection letters Medicredit sent Plaintiff, dated September 25 and October 28, 2025, both of which included a statement acknowledging that the debt was disputed. Medicredit's debt validation letters also failed to establish why the debt was valid despite Plaintiff's specific and evidence-supported allegations of payment misapplication. Additionally, on at least three occasions after the debt validation letters, Medicredit's representatives orally acknowledged both that the debt was disputed and that Plaintiff had adequately proved the debt was not his. In sum, Medicredit was notified in writing that the debt was disputed and failed to obtain adequate verification of the debt before continuing collection efforts. Medicredit thus violated § 1692(b).

121.    Plaintiff is entitled to actual damages, statutory damages, and reasonable attorneys' fees as provided in § 1692k.

122.    As a result of Defendants' violations of the FDCPA, Mr. Taylor has incurred damages, including monetary loss from lost time Mr. Taylor could have used to generate income, attorneys' fees, and emotional damages from Mr. Taylor's concern that he may be treated differently or potentially be refused life-saving care for taking legal action against companies attempting to collect a debt on behalf of Medical City.

## COUNT III
## GROSS NEGLIGENCE
## (AS TO DEFENDANT MEDICAL CITY)

123.    The allegations in the paragraphs above are re-alleged and incorporated herein by this reference.

124.    Medical city breached its duty under Texas Occupations Code § 101.352(h)-(i), which establishes that if a patient overpays for medical services, the medical provider must refund the patient the amount of the overpayment within thirty days.

125.    Medical City also breached the general duty that all who transact business have to not overcharge, as well as the specific duty medical providers have to refund overpayments as established in §101.352(h), by failing to refund Plaintiff for the $542.92 he overpaid for his June 14, 2024, ultrasound.

126.    Plaintiff was damaged by Medical City's breach of these duties as he has been deprived of money that is rightfully his.

127.    Medical City's failure to refund the overpayment objectively involves an extreme degree of risk and a high probability of financial harm to Plaintiff.

128.    Medical City was aware of the risk and harm involved with failing to refund Plaintiff's overpayment and proceeded with conscious indifference to Plaintiff's rights and welfare.

129.    Plaintiff has incurred and seeks to recover his actual damages related to Medical City's gross negligence, as well as exemplary damages.

130.    Plaintiff is entitled to actual damages, exemplary damages, and his reasonable attorneys' fees and costs for Medical City's gross negligence.

## REQUEST FOR ATTORNEYS' FEES
## (AS TO ALL DEFENDANTS)

131.    The allegations in the paragraphs above are re-alleged and incorporated herein by this reference.

132.    Through the conduct described herein, Defendants have inflicted actual damages upon Plaintiff.

133.    Moreover, Plaintiff has been forced to retain legal counsel, who has incurred reasonable and necessary attorneys' fees on his behalf.

134.    Such fees are properly taxed against Defendants pursuant to the FDCPA and the TDCA.

## REQUEST FOR DECLARATORY RELIEF

135.    The allegations in the paragraphs above are re-alleged and incorporated herein by this reference.

136.    As outlined in the preceding counts and the preceding factual allegations, Medical City, Medicredit, and NPAS repeatedly violated state and federal law in the course of pursuing Plaintiff for a disputed debt. Plaintiff seeks a declaration that Medical City, Medicredit, and NPAS's actions as described herein violated the state and federal laws outlined herein.

137.    Plaintiff is entitled to declaratory judgment pursuant to the Federal Declaratory Judgment Act.

## REQUEST FOR INJUNCTIVE RELIEF

138.    The allegations in the paragraphs above are re-alleged and incorporated herein by this reference.

139.    The actions of NPAS in repeatedly attempting to collect on the disputed debt show that it is the policy, procedure, and practice of NPAS to attempt to collect on debts it has reason to

**PLAINTIFF'S ORIGINAL COMPLAINT**                                                              **Page 25**

know have already been paid in full. It is likely that, absent an injunction, NPAS will continue its attempts to collect from Plaintiff.

140. Plaintiff is entitled, under TDCA § 392.403, to an injunction requiring NPAS and any successors in interest of same, to refrain from pursuing Plaintiff for the disputed debt and to refrain from selling or transferring the disputed debt account to any other entity.

141. Therefore, plaintiff seeks injunctive relief as set forth above and payment of attorneys' fees and costs for Defendants' violations as described herein.

## REQUEST FOR ACTUAL DAMAGES, STATUTORY DAMAGES, EXEMPLARY DAMAGES AND SANCTIONS

142. The allegations in the paragraphs above are re-alleged and incorporated herein by this reference.

143. Plaintiff is also entitled to statutory damages as set forth herein.

144. As a result of Defendants' activities, Plaintiff has incurred actual damages and attorneys' fees and costs, including the loss of $542.92 Medical City should have refunded, monetary loss from lost time Mr. Taylor could have used to generate income, attorneys' fees, and emotional damages from Mr. Taylor's concern that he may be treated differently or potentially be refused life-saving care for taking legal action against Medical City.

145. Such damages are properly taxed against Defendants pursuant to the TDCA and the FDCPA.

146. Plaintiff seeks that the Court award Plaintiff his actual damages, statutory damages, and attorneys' fees and costs, and impose all available penalties, sanctions, and exemplary damages in an amount sufficient to deter Defendants from future misconduct.

## DEMAND FOR JURY TRIAL

147.    Plaintiff requests a jury trial for any and all counts contained herein for which a trial by jury is permitted by law.

## PRAYER

WHEREFORE, Plaintiff requests that this Court grant the relief as requested herein in favor of the Plaintiff by:

a)  Awarding Plaintiff actual and statutory damages, including attorneys' fees and costs, to which Plaintiff is entitled;

b)  Awarding Plaintiff declaratory and injunctive relief, actual damages, punitive and/or exemplary damages, and attorneys' fees and costs for Defendants' violations of law;

c)  Awarding Plaintiff pre-judgment and post-judgment interest, as well as reasonable attorneys' fees and costs; and

d)  Awarding such other relief as this Court may deem just and proper.

Respectfully submitted,

KELLETT & BARTHOLOW PLLC

*/s/ Theodore O. Bartholow, III*
Theodore O. Bartholow, III ("Thad")
State Bar No. 24062602
Claude D. Smith
State Bar No. 24028778
11300 N. Central Expy, Ste 301
Dallas, TX 75243
Tel.: (214) 696-9000
Fax: (214) 696-9001
thad@kblawtx.com

**ATTORNEYS FOR PLAINTIFF**

---